## Spratt, Johnston, & Company, Garnishees, Plffs. in Err., *v.* Merchants & Manufacturers' National Bank.

An acceptance of an order for a certain quantity of steel to be taken out on or before a certain date at designated prices for different kinds of steel, but without naming the amounts of each kind, the terms to be four months from date of invoice, constitutes a sale of goods on request.

There can be no default on the part of the vendors, by failure to deliver, until after a demand, specification of the kinds or amounts of steel required under the contract, and a designation of the time of delivery.

A seizure and sale by the sheriffs, of all the property of the vendors, a corporation, will not operate as a waiver of demand and specification under the contract.

A statement by one of the vendors that they concluded the thing was all up and there was no chance of their starting again, followed by a remark of the vendee that he would have to go into the market and purchase elsewhere, will not operate as a waiver of such demand.

(Decided November 15, 1886.)

Error to the Common Pleas No. 1 of Allegheny County to review a judgment for plaintiff in an attachment execution. Affirmed.

On the trial before COLLIER, J., the following facts appeared:

The plaintiffs in error, Spratt, Johnston & Company, were summoned as garnishees of the Seimens-Anderson Steel Company, a corporation, in an attachment execution at the suit of the Merchants' & Manufacturers' Bank of Pittsburgh. They pleaded *nulla bona*. On trial of the attachment they produced a statement of their account which was admitted to be correct, showing that, at the date of the service of the writ, they were indebted to the steel company in the sum of $1,267. This indebtedness was for plow steel sold and delivered under the following written order, duly accepted:

"We will give you an order for three hundred tons of plow steel to be taken out on or before March 31, 1882, at the following prices and conditions:

NOTE.—The first hearing of this case is found *sub nom.* Merchants' & Mfrs. Nat. Bank v. Spratt, 108 Pa. 97.

"Slab steel, Alabama, Magnolia, and Allen sweeps and all straight cuts at 3½c. per lb.; bull tongues, round point shovel and all regular turn shovels at 4c. per lb. . . . Terms four months from date of invoice. . . . All shapes not named in same proportion as above."

At the time of the service of the attachment, on January 11, 1882, 109 tons only of the steel mentioned in the contract had been received. This had been delivered from time to time prior to January 1, 1882, upon demand, and according to specifications furnished to the company by the garnishees, and had been all paid for except the sum of $1,267. About January 1, 1882, the garnishees gave the steel company an order and specification for 21½ tons, which the steel company proceeded to execute; but before the company was ready to deliver the steel, to wit, on January 10, 1882, its entire establishment was levied upon by the sheriff, who took actual possession thereof and sold the entire stock of material of every description belonging to said company. The real estate was sold March 6, 1882. After the levy on January 10, 1882, the steel company never operated its works. The garnishees claimed a set-off for breach of contract in failure of the company to fill the balance of the order under the contract, to wit, 170 tons.

The case was tried before, in 1884, when a verdict was rendered for the defendants. This was reversed by the supreme court, on the ground that the defendants must order the kinds or amounts of steel and designate the time of delivery, before there could be a default. 15 Pittsb. L. J.

On the present trial the defendants offered evidence, recited in the opinion of the supreme court, to prove a waiver of demand.

The assignment of error specified the affirmance of the following point presented by the plaintiff:

Under all the evidence in the cause the jury can only allow a set-off as to 21½ tons of steel, and the verdict must be for the amount admitted by defendants to be due, with interest, less any loss that the defendants may have suffered upon said 21½ tons of steel.

*John S. Ferguson*, for plaintiffs in error.—If, before the time appointed for performing the contract, the promisor announces his intention not to perform, the promisee will be entitled to

treat such notice as a present breach of contract, and to have recourse to immediate legal proceedings. Leake, Contr. p. 871.

So with a contract for the sale and delivery of goods at a future time, or in instalments at future times; a notice by the seller to the buyer (of his intention not to deliver) may be accepted and acted upon as an immediate breach of the contract. Brown v. Muller, L. R. 7 Exch. 319; Zuck v. McClure, 98 Pa. 541.

*Charles C. Dickey* and *George Shiras, 3d,* for defendants in error.—The very terms of the contract required that each and every delivery must be preceded by a specification of the kind and amount required. There could be no tender while there must be a request. It was a precedent condition and an essential part of the contract. Hamilton v. Calhoun, 2 Watts, 139.

How would a jury intelligently assess damages other than upon the amount clearly specified and ordered? They would be completely at sea as to the time when the market price was pertinent, and could only guess about the varieties and amounts wanted.

This is no better than a writ of error to the first writ. The decision of the former case governs this. Merchants' & Mfr's. Nat. Bank v. Spratt, J. & Co. 15 Pittsb. L. J. —.

OPINION BY MR. JUSTICE CLARK:

When this case was here before, we said that in order to recover damages for the nondelivery of any part of the remaining portion of the steel, it was necessary for Spratt, Johnston & Company, under their contract with the Seimens-Anderson Steel Company, not only to specify the particular kinds, and to indicate the amount of each kind, of steel which they might from time to time require the company to furnish, but also to designate the time for the delivery thereof. This was necessary, for the reason that the Seimens-Anderson Steel Company could not know in advance of any specification what one or more of the several kinds of steel mentioned in the contract Spratt, Johnston & Company might choose to have, nor how much of each, nor at what time, within the period of performance fixed by the agreement, they might require the same to be furnished; and the steel company could in the very nature of the case be in no default until this was done.

It is contended, however, that under the evidence taken at the second trial no such specification was required. The evidence which is relied upon to effectuate a waiver of this preliminary requisite is found in the testimony of Edward S. Hartman, in which he says, that at the time of the failure of the steel company, or afterwards, he went to their place of business and found it closed up; that they told him they would open again in about a week; that at the expiration of that time he again called, when they gave him further assurance that they would start up in a short time. He called again, about a month after they were closed, with reference to the steel; he says: "They concluded that the thing was all up, and there was no chance of them starting again, and I told them we would have to go right into the market and get it somewhere else."

The fact remains, however, that no demand was made, no specification furnished, and no time designated for the delivery of any of the undelivered portion of the steel. *Non constat,* as we said in our previous opinion, if these conditions of the contract had been complied with, that, by an assignment or otherwise, the order might not have been filled, or that creditors, to realize the avails of the contract, might not have intervened through a receiver, to provide the means of compliance.

We do not say, of course, that the steel company, by the use of apt words to that effect, might not have waived the necessity for any demand, specification, or designation of time for delivery; but the testimony relied upon is wholly inadequate to establish the fact that the company did so.

The judgment is affirmed.